Michael J. Boyle, Jr. (SBN 258560)
BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 578-5582
mboyle@bgandg.com

Attorneys for Plaintiff
[Additional counsel appear on signature page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RODNEY FESSLER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>D-WAVE QUANTUM INC., ALAN BARATZ, and JOHN M. MARKOVICH,<br><br>Defendants. | **Case No. 5:26-cv-11953**<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Rodney Fessler ("Plaintiff"), individually and on behalf of all others similarly situated, by and through Plaintiff's undersigned counsel, for Plaintiff's First Amended Class Action Complaint against Defendants, alleges the following upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, among other things, the investigation conducted by and through Plaintiff's counsel, which included, *inter alia*, a review of: D-Wave Quantum Inc.'s ("D-Wave" or the "Company") filings with the U.S. Securities and Exchange Commission ("SEC"), including its Forms 10-K, 10-Q, and 8-K and the Forms 4 filed by the Company's officers; transcripts of the Company's earnings conference calls; the Company's press releases; analyst reports and media coverage concerning the Company; and publicly available trading data. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a federal securities class action on behalf of all persons and entities, other than Defendants, that purchased or otherwise acquired D-Wave securities between February 26, 2026 and August 25, 2026, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company, its Chief Executive Officer ("CEO") Alan Baratz, and its former Chief Financial Officer ("CFO") John M. Markovich.

2. D-Wave develops and sells quantum computing systems and services. The Company generates revenue from three sources: quantum computing as a service ("QCaaS"), professional services, and sales of quantum computing systems. Throughout the Class Period, Defendants emphasized "Bookings," an operating metric the Company defines as "customer orders received that are expected to generate net revenues in the future," as a key measure of the Company's commercial progress.

3. The Class Period begins on February 26, 2026, when Defendant Baratz announced that D-Wave's 2025 results reflected "meaningful growth across every key business metric — revenue, Bookings, technical milestones, and scientific breakthroughs," and that the Company was "entering 2026 with exceptional momentum." In fact, the Company's full-year 2025 Bookings had *decreased* 22%, from $23.9 million in 2024 to $18.7 million in 2025, and fourth-quarter 2025 Bookings had decreased 27% year over year. On the same day, Defendant Baratz told investors that the Company's "pipeline for system sales right now is very robust" and that "we're beyond one a year at this point in time."

4. On May 12, 2026, D-Wave announced "Record Quarterly Bookings of $33.4 Million." The bulk of those Bookings, however, came from two contracts — a $20 million system purchase by Florida Atlantic University ("FAU") and a $10 million, two-year QCaaS agreement with a Fortune 100 company — that the Company had already announced on January 27, 2026, before the Class Period began. That same day, in response to an analyst's question about D-Wave's ability to "secure 2 to 3 system sales a year," Defendant Baratz

assured investors that D-Wave was "well down the path of negotiating system deals with multiple customers" and that he had "a very high degree of confidence that we'll see 2 or 3 sales this year" and "a very high degree of confidence that we will actually deliver 2 of them this year."

5. Defendants' statements were materially false and misleading because, as set forth in detail below: (i) D-Wave's Bookings had declined, not grown, in 2025; (ii) the purported "Record Quarterly Bookings" consisted predominantly of two contracts announced before the Class Period, not new or expanding commercial adoption; (iii) upon information and belief, D-Wave was not then on track to convert its purported system-sales pipeline into new Bookings; and (iv) upon information and belief, the timing of system deliveries, and the associated revenue, was slipping to the end of 2026 and into 2027.

6. The truth began to emerge before the market opened on August 6, 2026, when D-Wave reported that its Bookings for the second quarter of 2026 had collapsed to just $2.1 million, down from $33.4 million in the prior quarter, and that its quarterly revenue of approximately $3.08 million was flat year over year and well below the analyst consensus estimate of $4.03 million. D-Wave also reported a net loss of $0.13 per share, versus a consensus estimate of a $0.09 loss. On the earnings call that morning, Defendant Markovich disclosed that both annealing systems D-Wave expected to ship in 2026 were "likely to ship during the fourth quarter," "resulting in some carryover revenue related to the installation and calibration of these systems into 2027." Defendant Baratz, who on May 12, 2026 had professed "a very high degree of confidence that we'll see 2 or 3 sales this year," now stated only that D-Wave "continue[s] to expect to book two to three systems deals annually going forward."

7. On this news, D-Wave's stock price fell $1.98 per share, or 9.26%, from a close of $21.39 per share on August 5, 2026 to close at $19.41 per share on August 6, 2026, on volume of approximately 23.7 million shares.

8. Then, after the market closed on August 25, 2026, D-Wave issued a press release announcing that Defendant Markovich "is retiring and thus resigning from his position as Chief Financial Officer effective September 2, 2026." The Company's Form 8-K disclosed

that Markovich had notified the Company of his decision on August 19, 2026 — less than two weeks after the second-quarter disclosures, and approximately two months after he sold over 628,000 shares of D-Wave stock for proceeds of approximately $16.8 million. On this news, D-Wave's stock price fell $1.84 per share, or 9.51%, to close at $17.51 per share on August 26, 2026, on volume of approximately 26.5 million shares.

9. During the Class Period, while D-Wave's stock price was inflated by Defendants' misstatements, Defendants Baratz and Markovich together sold approximately 1.3 million shares of D-Wave stock for proceeds of approximately $34.8 million, at weighted-average prices ranging from $24.01 to $31.00 per share.

10. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

13. Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). D-Wave maintains its principal executive offices in this District, and many of the acts and omissions charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.

14. In connection with the acts, transactions, and conduct alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**Divisional Assignment**

15. Pursuant to Civil Local Rules 3-2(c) and 3-5(b), this action is a securities class action, a case category assigned on a district-wide basis under the Court's Assignment Plan, General Order No. 44 § D(3). To the extent a divisional assignment is required, assignment to the San Jose Division is appropriate because D-Wave's principal executive offices are located in Palo Alto, Santa Clara County, California.

**PARTIES**

16. Plaintiff Rodney Fessler, as set forth in the accompanying certification incorporated by reference herein (Exhibit A), purchased D-Wave securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the corrective disclosures alleged herein.

17. Defendant D-Wave is a Delaware corporation with its principal executive offices at 2650 East Bayshore Road, Palo Alto, California. From August 8, 2022 through the close of trading on July 24, 2026, D-Wave's common stock traded on the New York Stock Exchange ("NYSE"). Effective at market open on July 27, 2026, D-Wave transferred its listing to the Nasdaq Stock Market ("Nasdaq"), where its common stock continues to trade. At all relevant times, D-Wave's common stock traded under the ticker symbol "QBTS."

18. Defendant Alan Baratz ("Baratz") was, at all relevant times, D-Wave's CEO and President. Baratz signed certifications pursuant to Rule 13a-14(a) and 18 U.S.C. § 1350 (Sections 302 and 906 of the Sarbanes-Oxley Act of 2002 ("SOX")) accompanying D-Wave's Annual Report on Form 10-K for fiscal year 2025, filed with the SEC on February 26, 2026 (the "2025 10-K"), and D-Wave's Quarterly Reports on Form 10-Q for the quarters ended March 31, 2026 (the "1Q26 10-Q") and June 30, 2026 (the "2Q26 10-Q"). Baratz was quoted in each of D-Wave's earnings press releases during the Class Period and spoke on the Company's earnings calls held on February 26, May 12, and August 6, 2026. Baratz also signed the Form 8-K announcing Defendant Markovich's resignation.

19. Defendant John M. Markovich ("Markovich") was, at all relevant times, D-Wave's CFO and its principal financial and accounting officer. Markovich signed SOX

certifications accompanying the 2025 10-K, the 1Q26 10-Q, and the 2Q26 10-Q. Markovich spoke on D-Wave's earnings calls held on February 26, May 12, and August 6, 2026. Markovich resigned as CFO effective September 2, 2026.

20. Defendants Baratz and Markovich are collectively referred to herein as the "Individual Defendants."

21. The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of D-Wave's SEC filings, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations being made were then materially false and misleading.

22. D-Wave and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

23. D-Wave is a quantum computing company that sells access to its annealing quantum computers through the cloud (QCaaS), provides professional services, and sells on-premises quantum computing systems. For fiscal year 2025, D-Wave reported total revenue of $24.6 million, of which approximately $16.2 million came from system sales, $5.5 million from QCaaS, and $2.7 million from professional services. A single customer ("Customer A") accounted for 67% of D-Wave's 2025 revenue.

24. Because individual system sales are large relative to D-Wave's total revenue, the timing of new system Bookings, and of the delivery and installation of systems already sold, is critical to the Company's revenue. D-Wave states that it recognizes revenue from

quantum computing system sales over time during the installation period. The 2025 10-K reported that, as of December 31, 2025, D-Wave's remaining performance obligations were "$13.4 million, of which approximately 14% is expected to be recognized to revenue in the next 12 months."

25. On January 20, 2026, D-Wave completed its acquisition of Quantum Circuits, Inc., a gate-model quantum computing company, for 10,430,444 D-Wave common shares and $250.0 million in cash, subject to adjustment.

26. On January 27, 2026 — before the start of the Class Period — D-Wave announced two contracts: a $20 million agreement under which FAU would purchase an Advantage2 annealing quantum computer, and a $10 million, two-year enterprise QCaaS agreement with a Fortune 100 company.

**Defendants' Duty to Disclose Known Trends and Uncertainties**

27. Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303(b)(2)(ii), required D-Wave to describe in its periodic reports "any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." Having chosen to speak about the Company's Bookings, system-sales pipeline, and commercial momentum, Defendants were obligated to speak fully and truthfully and not to omit facts — including the known trends and uncertainties alleged herein — necessary to make their affirmative statements not misleading. Defendants' omission of those known trends and uncertainties rendered their affirmative statements misleading half-truths. *See Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 263–66 (2024).

**Materially False and Misleading Statements Issued During the Class Period**

**February 26, 2026: Fourth Quarter and Full-Year 2025 Results**

28. The Class Period begins on February 26, 2026, when D-Wave issued a press release, filed with the SEC as Exhibit 99.1 to a Form 8-K, announcing its fourth-quarter and full-year 2025 results. The press release quoted Defendant Baratz as stating:

> ***"Our 2025 results mark one of the most successful and transformative years in D-Wave's history, with meaningful growth across every key business***

***metric — revenue, Bookings, technical milestones, and scientific breakthroughs," said Dr. Alan Baratz, CEO of D-Wave. "We are entering 2026 with exceptional momentum: generating over $30 million in Bookings in January alone, expanding our market leadership through the acquisition of gate-model quantum computing company Quantum Circuits, Inc., and securing an eight-figure enterprise QCaaS agreement that underscores growing customer confidence in our technology's power to transform enterprise operations. 2026 is shaping up to be a defining year for D-Wave."***

29. The statements in ¶ 28 were materially false and misleading when made because:

(a) Defendant Baratz's representation that D-Wave's 2025 results reflected "meaningful growth across every key business metric," expressly including "Bookings," was a statement of then-existing historical fact that was false. D-Wave's Bookings for fiscal year 2025 were $18.7 million, a *decrease* of $5.2 million, or 22%, from $23.9 million in fiscal year 2024, and its fourth-quarter 2025 Bookings were $13.4 million, a decrease of 27% from the fourth quarter of 2024. That the press release elsewhere attributed the decline to a large system sale booked in the prior year does not make Defendant Baratz's headline claim of "meaningful growth" in Bookings true; it confirms that Defendants knew Bookings had declined;

(b) Defendant Baratz's representation that D-Wave was "entering 2026 with exceptional momentum" because it had generated "over $30 million in Bookings in January alone" was misleading. Those January Bookings consisted predominantly of two contracts — the $20 million FAU system sale and the $10 million Fortune 100 QCaaS agreement, together totaling $30 million — that were announced on January 27, 2026, before the Class Period. By presenting those two contracts as evidence of "exceptional momentum," Defendants conveyed that D-Wave's commercial demand was accelerating, while omitting that, upon information and belief, Defendants had no comparable new system deals near closing, as D-Wave's second-quarter 2026 Bookings of only $2.1 million later confirmed; and

(c) Defendants failed to disclose that, upon information and belief, D-Wave was not on track to convert its claimed pipeline into additional system Bookings in the

following quarters, a known trend that was reasonably likely to have a material unfavorable impact on D-Wave's revenue and which Item 303 required Defendants to disclose.

30. Also on February 26, 2026, D-Wave held an earnings conference call for analysts and investors, on which Defendants Baratz and Markovich spoke. In response to a question from David Williams of Benchmark regarding the Company's pipeline, Defendant Baratz recalled that at the beginning of the prior year he had told investors to "expect maybe one a year for the foreseeable future" in system sales, and then stated that D-Wave's "pipeline for system sales right now is very robust" and that "we're beyond one a year at this point in time."

31. The statements in ¶ 30 were materially false and misleading when made because:

(a) Defendant Baratz's statement that D-Wave's system-sales pipeline was "very robust" "right now" and that the Company was "beyond one a year" in system sales was a statement of present fact that, upon information and belief, lacked a reasonable basis: apart from the FAU contract announced before the Class Period, D-Wave's reported Bookings for the first and second quarters of 2026 reflect no new system sale — its second-quarter 2026 Bookings totaled only $2.1 million, roughly one-tenth of the value of the single FAU system sale; and

(b) Defendants failed to disclose that, upon information and belief, the delivery and revenue recognition of the systems already sold would slip to the fourth quarter of 2026 and into 2027, a known trend reasonably likely to have a material unfavorable impact on D-Wave's revenue.

32. Also on February 26, 2026, D-Wave filed the 2025 10-K. Attached to the 2025 10-K were SOX certifications signed by Defendants Baratz and Markovich, each certifying that "[b]ased on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the

circumstances under which such statements were made, not misleading with respect to the period covered by this report".

33. The SOX certifications in ¶ 32 were materially false and misleading because the 2025 10-K failed to disclose the known trends and uncertainties alleged herein concerning D-Wave's Bookings and system-sales pipeline, as required by Item 303, rendering the 2025 10-K's discussion of D-Wave's business and prospects materially misleading.

34. The 2025 10-K's risk factors also presented as merely hypothetical risks that, upon information and belief, had already materialized. The 2025 10-K warned that "[t]he immature market for quantum computing may lead to us misread market demand and the timeframes it will take to close customer contracts and grow revenue." The 2025 10-K further stated that "[w]e derive much of our revenue from our cloud-based quantum computing platform and professional services, which we expect to continue for the foreseeable future."

35. The statements in ¶ 34 were materially false and misleading because: (a) upon information and belief, by February 26, 2026, D-Wave had no new system deals near closing beyond the FAU contract, such that the risk of misreading market demand and the time needed to close customer contracts was not hypothetical but had already materialized; and (b) in fiscal year 2025, approximately $16.2 million of D-Wave's $24.6 million in revenue — roughly 66% — came from system sales rather than from its cloud platform and professional services, and a single customer accounted for 67% of D-Wave's revenue, such that the statement that D-Wave derives "much of [its] revenue from [its] cloud-based quantum computing platform and professional services" misdescribed D-Wave's actual dependence on large, infrequent system sales. Both risk-factor statements were carried forward from D-Wave's Annual Report on Form 10-K for fiscal year 2024, notwithstanding that shift in D-Wave's revenue.

**May 12, 2026: First Quarter 2026 Results**

36. On May 12, 2026, D-Wave issued a press release, filed with the SEC as Exhibit 99.1 to a Form 8-K, announcing its financial results for the first quarter of 2026. The press release's first subheadline announced "Record Quarterly Bookings of $33.4 Million, Up Nearly 2,000% Year over Year," and the release quoted Defendant Baratz as stating:

> ***"D-Wave's first quarter performance highlights what sets this company apart: strong execution, expanding commercial adoption, and differentiated technology leadership across both annealing and gate model quantum computing," said Dr. Alan Baratz, CEO of D-Wave. "As the only quantum computing company pursuing both annealing and gate-model quantum computing systems, we believe that D-Wave is uniquely positioned to participate in the full addressable quantum computing market. Our acquisition of Quantum Circuits is expected to meaningfully accelerate our delivery of a scalable, error-corrected gate model system, while our record-setting $10 million quantum computing as a service agreement with a Fortune 100 company reinforced growing demand for our annealing systems. We believe that D-Wave's combination of commercial proof, technical breadth, and a differentiated path to gate-model error correction and scaling will be increasingly prominent as this market matures."***

37. During D-Wave's earnings call held the same day, an analyst from Needham asked Defendant Baratz "what's driving your confidence in being able to secure 2 to 3 system sales a year?" Defendant Baratz responded:

> ***Sure. So as both John and I indicated, our pipeline has significantly increased over the course of the last year. And we are well down the path of negotiating system deals with multiple customers, none of which has been communicated to date. So with the Florida Atlantic University sale this year and the progress that we're making on several other system deals, I have a very high degree of confidence that we'll see 2 or 3 sales this year. And as I said, a very high degree of confidence that we will actually deliver 2 of them this year.***

38. The statements in ¶¶ 36–37 were materially false and misleading when made because:

(a) The representations of "Record Quarterly Bookings," "strong execution," and "expanding commercial adoption" were misleading. Although the press release identified the FAU and Fortune 100 contracts as included in first-quarter Bookings, both contracts had been announced on January 27, 2026, before the Class Period, and did not reflect expanding commercial adoption during the quarter. Defendants omitted that, upon information and belief, no comparable new contracts were then being secured, as D-Wave's second-quarter 2026 Bookings of only $2.1 million later confirmed. The increase in D-Wave's remaining performance obligations from $13.4 million at December 31, 2025 to $42.4 million at March 31, 2026 — approximately $29 million — likewise corresponds to the $30 million in contracts announced in January 2026, and did not reflect new commercial adoption;

(b) Defendant Baratz's statements that D-Wave was "well down the path of negotiating system deals with multiple customers" and was making "progress . . . on several other system deals" were statements of present fact that, upon information and belief, were false or lacked a reasonable basis: D-Wave's total Bookings for the second quarter of 2026 were only $2.1 million — roughly one-tenth of the value of the single FAU system sale — reflecting no new system sale, and by August 6, 2026, Defendant Baratz had retreated to stating only that D-Wave "continue[s] to expect to book two to three systems deals annually going forward";

(c) Defendant Baratz's statement of "a very high degree of confidence that we will actually deliver 2 of them this year" omitted that, upon information and belief, Defendants then knew or recklessly disregarded that the delivery of D-Wave's systems was slipping to the fourth quarter of 2026, such that revenue from those systems would carry over into 2027; and

(d) Defendants failed to disclose the foregoing known trends and uncertainties, which were reasonably likely to have a material unfavorable impact on D-Wave's revenue, as required by Item 303.

39. Also on May 12, 2026, D-Wave filed the 1Q26 10-Q, accompanied by SOX certifications signed by Defendants Baratz and Markovich in substantially the same form as those described in ¶ 32. The 1Q26 10-Q stated that "[t]here have been no material changes from the risk factors set forth in our Annual Report on Form 10-K."

40. The statements in ¶ 39 were materially false and misleading for the reasons set forth in ¶¶ 29 and 38, and because the 1Q26 10-Q failed to disclose the known trends and uncertainties alleged herein concerning D-Wave's Bookings, system-sales pipeline, and the timing of system deliveries, as required by Item 303.

## **THE TRUTH EMERGES**

### **August 6, 2026: Second Quarter 2026 Results**

41. Before the market opened on August 6, 2026, D-Wave issued a press release announcing its second-quarter 2026 results. The press release disclosed that "Bookings for the

second quarter of 2026 were $2.1 million," compared to $33.4 million in the first quarter, and that "Revenue for the second quarter of 2026 was $3.1 million". According to the 2Q26 10-Q, second-quarter revenue was $3,076,000, compared to $3,095,000 in the second quarter of 2025, with system-sales revenue declining from approximately $1.0 million to approximately $0.26 million. D-Wave also reported a net loss of $48.0 million, or $0.13 per share.

42. D-Wave's reported revenue fell well short of the analyst consensus estimate of $4.03 million, and its loss per share was wider than the consensus estimate of a $0.09 loss, as reported by Investing.com.

43. During the earnings call held that morning, Defendant Markovich stated that "[b]ookings for the second quarter totaled $2.1 million" and that, while D-Wave "still expect[s] to ship two annealing quantum computer systems over the balance of this year," "both of which are likely to ship during the fourth quarter," "resulting in some carryover revenue related to the installation and calibration of these systems into 2027." On the same call, Defendant Baratz, who on May 12, 2026 had expressed "a very high degree of confidence that we'll see 2 or 3 sales this year," stated only that D-Wave "continue[s] to expect to book two to three systems deals annually going forward, including two system deliveries in 2026."

44. On this news, D-Wave's stock price fell $1.98 per share, or 9.26%, from its August 5, 2026 closing price of $21.39 to close at $19.41 per share on August 6, 2026, on unusually heavy volume of approximately 23.7 million shares, compared to approximately 17.1 million shares the prior trading day.

**August 25, 2026: CFO Departure**

45. After the market closed on August 25, 2026, D-Wave filed a Form 8-K and issued a press release, filed as Exhibit 99.1 thereto, announcing that Defendant Markovich "is retiring and thus resigning from his position as Chief Financial Officer effective September 2, 2026." The Form 8-K disclosed that Markovich had notified the Company of his intention on August 19, 2026, thirteen days after the second-quarter disclosures. The Company named its Senior Vice President of Finance as acting CFO; no permanent successor was identified.

46. On this news, D-Wave's stock price fell $1.84 per share, or 9.51%, to close at $17.51 per share on August 26, 2026, on heavy volume of approximately 26.5 million shares.

**UNDISCLOSED ADVERSE FACTS**

47. The market for D-Wave's securities was open, well-developed, and efficient at all relevant times. As a result of the materially false and misleading statements and omissions alleged herein, D-Wave's securities traded at artificially inflated prices during the Class Period. Plaintiff and other Class members purchased or otherwise acquired D-Wave securities relying upon the integrity of the market price of those securities and market information relating to D-Wave, and have been damaged thereby.

48. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of D-Wave's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make their statements not false and misleading, including that: (a) D-Wave's Bookings had declined in 2025; (b) D-Wave's purported record 2026 Bookings did not reflect new or expanding commercial adoption, because they consisted predominantly of two contracts signed before the Class Period and, upon information and belief, no comparable new contracts were being secured; (c) upon information and belief, D-Wave was not on track to convert its system-sales pipeline into new Bookings; (d) upon information and belief, the delivery of D-Wave's systems, and the associated revenue, was slipping to the fourth quarter of 2026 and into 2027; and (e) as a result, Defendants' positive statements about D-Wave's business, operations, and prospects lacked a reasonable basis.

**LOSS CAUSATION**

49. During the Class Period, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of D-Wave's securities and operated as a fraud or deceit on Class Period purchasers. When Defendants' prior misrepresentations and omissions were disclosed and became apparent to the market, the price of D-Wave's securities fell as the prior artificial inflation dissipated. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342–43, 346 (2005); *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016).

50. The August 6, 2026 disclosures revealed, at least in part, the truth concealed by Defendants' statements: that D-Wave's Bookings momentum was not sustainable, that its claimed system-sales pipeline had not converted into new Bookings, and that system deliveries and the associated revenue were slipping into the fourth quarter of 2026 and 2027. The August 25, 2026 announcement of Defendant Markovich's abrupt departure, coming days after those disclosures and following his substantial Class Period stock sales, further revealed the relevant truth and the risks concealed by Defendants' misstatements, and caused additional artificial inflation to dissipate.

51. The declines in D-Wave's stock price were caused by the disclosure of company-specific information, not by market, industry, or sector factors. The following table compares the one-day change in D-Wave's closing stock price on each disclosure date with the broader market, with D-Wave's publicly traded quantum computing peers, and with an exchange-traded fund tracking the quantum computing industry:

| Security | Aug. 6, 2026 | Aug. 26, 2026 |
|---|---|---|
| D-Wave (QBTS) | -9.26% | -9.51% |
| S&P 500 Index | -0.18% | -0.02% |
| Nasdaq Composite Index | -0.06% | -0.08% |
| IonQ, Inc. (IONQ) | -0.53% | -4.80% |
| Rigetti Computing, Inc. (RGTI) | -1.49% | -5.90% |
| Quantum Computing Inc. (QUBT) | -1.18% | -1.30% |
| Defiance Quantum ETF (QTUM) | -0.50% | -0.01% |

52. As the table shows, D-Wave's stock declined far more than the broader market and its industry peers on each disclosure date. The economic loss, *i.e.*, damages, suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the price of D-Wave's securities and the subsequent significant decline in the value of those securities when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

## ADDITIONAL SCIENTER ALLEGATIONS

53. As alleged herein, Defendants acted with scienter in that they knew or were deliberately reckless in not knowing that the public statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements would be issued or disseminated to the investing public; and knowingly and substantially participated in the issuance or dissemination of such statements as primary violators of the federal securities laws. Considered holistically, as required by *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007), the facts alleged herein give rise to a strong inference of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 314. *See also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 992 (9th Cir. 2009).

### Defendants Spoke Directly About, and Had Access to, Real-Time Bookings and Pipeline Data

54. Bookings and system sales were the core operating metrics of D-Wave's business, and Defendants themselves chose to make them the centerpiece of their Class Period communications. Defendant Baratz personally reported the Company's Bookings figures, characterized the state of the system-sales pipeline, and described D-Wave as "negotiating system deals with multiple customers." Defendant Markovich spoke on each earnings call and, on August 6, 2026, personally reported the second-quarter Bookings figure. Given the small number of system transactions — each worth millions of dollars and a substantial share of D-Wave's total revenue — Defendants necessarily knew, or were deliberately reckless in not knowing, the status of each such transaction. *See S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785–86 (9th Cir. 2008).

55. Defendant Baratz's statement on February 26, 2026 that D-Wave's 2025 results reflected growth in "Bookings" was contradicted by the Bookings figures reported in the very same press release, which Defendants had reviewed and approved for issuance.

### Temporal Proximity and Magnitude

56. Defendant Baratz's May 12, 2026 assurances that D-Wave was "well down the path of negotiating system deals with multiple customers" were made seven weeks before the

end of a quarter in which D-Wave booked a total of only $2.1 million — a decline of approximately 94% from the prior quarter's $33.4 million. The proximity and magnitude of this reversal support a strong inference that Defendants knew, or recklessly disregarded, that their statements lacked a reasonable basis when made.

**<u>The Individual Defendants' Suspicious Insider Sales</u>**

57. While in possession of material adverse non-public information, the Individual Defendants sold substantial amounts of D-Wave stock at artificially inflated prices during the Class Period, as reflected in their Forms 4 filed with the SEC. Excluding transactions identified as tax-withholding or "sell to cover" transactions, the Individual Defendants' open-market sales during the Class Period were as follows:

| Defendant | Date | Shares Sold | Wtd. Avg. Price | Proceeds |
|---|---|---|---|---|
| Markovich | 05/22/2026 | 328,752 | $27.7037 | $9,107,646.78 |
| Markovich | 06/02/2026 | 2,908 | $31.00 | $90,148.00 |
| Markovich | 06/08/2026 | 50,979 | $26.24 | $1,337,688.96 |
| Markovich | 06/09/2026 | 70 | $26.54 | $1,857.80 |
| Markovich | 06/12/2026 | 46,043 | $24.01 | $1,105,492.43 |
| Markovich | 06/15/2026 | 100,000 | $25.75 | $2,575,000.00 |
| Markovich | 06/15/2026 | 100,000 | $25.68 | $2,568,000.00 |
| Baratz | 06/08/2026 | 687,627 | $26.13 | $17,967,693.51 |
| Markovich total | | 628,752 | | $16,785,833.97 |
| Baratz total | | 687,627 | | $17,967,693.51 |
| TOTAL | | 1,316,379 | | $34,753,527.48 |

58. These sales were suspicious in their timing and circumstances. Each Individual Defendant exercised stock options with exercise prices below $1.00 per share — exhausting every remaining option under each of the two grants exercised — and sold the underlying shares the same day (Markovich on May 22, 2026 and Baratz on June 8, 2026), and Markovich made additional open-market sales over the following weeks. All of the sales occurred within a span of approximately three and a half weeks, at weighted-average prices between $24.01 and $31.00 per share, after Defendants' May 12, 2026 assurances and before the August 6, 2026 disclosures, following which D-Wave's stock fell to $17.51 per share. None of the options

exercised was near expiration: the options Markovich exercised were not scheduled to expire until 2031 and 2034, and those Baratz exercised were not scheduled to expire until 2030 and 2034. Insider sales are probative of scienter where they are made "at times calculated to maximize the personal benefit from undisclosed inside information." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (quoting *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1117 (9th Cir. 1989)).

59. None of Defendant Markovich's Class Period sales was made pursuant to a Rule 10b5-1 trading plan. None of his Class Period Forms 4 indicates that the sales were made under such a plan, and no plan covered them: Markovich's prior plan, adopted August 21, 2025, covered up to 500,000 shares, all of which his Forms 4 report as sold pursuant to that plan by December 22, 2025, and the plan was scheduled to expire on May 20, 2026 — two days before his May 22, 2026 sale. According to the 2Q26 10-Q, Markovich adopted a new Rule 10b5-1 trading plan on June 16, 2026 — the day after his last Class Period sale.

60. Defendant Baratz's June 8, 2026 Form 4 likewise does not indicate that the sale was made pursuant to a Rule 10b5-1 trading plan, stating only that "[t]he sales reported in this Form 4 were effected for financial and tax planning purposes." According to the 1Q26 10-Q, Baratz adopted a Rule 10b5-1 trading plan on March 2, 2026 — *during* the Class Period, after he had made the February 26, 2026 statements alleged herein. To the extent Baratz's sales were made pursuant to that plan, the plan provides no defense: under 17 C.F.R. § 240.10b5-1(c)(1)(ii)(B)(1), the plan's mandatory cooling-off period expired on or about May 31, 2026, and Baratz's sale occurred approximately one week later. Baratz's prior Rule 10b5-1 plan, adopted August 11, 2025, covered up to 1,600,000 shares, all of which his Forms 4 report as sold pursuant to that plan by December 22, 2025. The timing of the new plan's adoption — four days after the February 26, 2026 statements alleged herein, while the adverse facts alleged herein remained undisclosed — and Baratz's sale shortly after the plan's cooling-off period expired support a strong inference that the plan was adopted to take advantage of D-Wave's artificially inflated stock price. "When executives enter into a trading plan during the Class Period and the Complaint sufficiently alleges that the purpose of the plan was to take advantage

of an inflated stock price, the plan provides no defense to scienter allegations." *Emps.' Ret. Sys. of Gov't of the V.I. v. Blanford*, 794 F.3d 297, 309 (2d Cir. 2015).

**The Timing of Defendant Markovich's Departure**

61. Defendant Markovich notified D-Wave of his decision to resign on August 19, 2026, less than two weeks after the August 6, 2026 disclosures and approximately two months after he sold approximately $16.8 million of D-Wave stock at prices up to $31.00 per share. Markovich resigned with no permanent successor in place, and the Company named an acting CFO. The timing of Markovich's departure, viewed together with his insider sales and his role in making the statements alleged herein, further supports a strong inference of scienter.

62. Additional evidence of Defendants' scienter, including internal Bookings reports, pipeline and forecast data, system-delivery schedules, and communications concerning the matters alleged herein, is peculiarly within Defendants' possession and control and is expected to be obtained through discovery.

**NO SAFE HARBOR**

63. The statutory safe harbor provided for forward-looking statements under certain circumstances, 15 U.S.C. § 78u-5, does not apply to any of the allegedly false statements pleaded herein. Many of the statements pleaded herein were not identified as forward-looking when made, and concerned historical or then-present facts and conditions, including D-Wave's reported Bookings, the state of its system-sales pipeline, and the status of its negotiations with customers. *See In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1141–42, 1146–48 (9th Cir. 2017). To the extent any statement was forward-looking, it was not accompanied by meaningful cautionary language. D-Wave's cautionary statements were generic warnings applicable to any early-stage technology company and did not warn of the specific, then-existing facts alleged herein. D-Wave's general statement that quantum computing system revenue "is expected to remain irregular and intermittent" did not warn that, upon information and belief, no new system deals were near closing, or that the delivery of the systems D-Wave expected to ship in 2026 would slip to the fourth quarter and push revenue into 2027. Cautionary language that describes as merely possible risks that have already materialized is

not meaningful. In the alternative, Defendants are liable for any forward-looking statements pleaded herein because, at the time each was made, the speaker had actual knowledge that the statement was false or misleading, and/or the statement was authorized or approved by an executive officer of D-Wave who knew that the statement was false when made.

## CLASS ACTION ALLEGATIONS

64. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons and entities that purchased or otherwise acquired D-Wave securities during the Class Period and were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

65. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, D-Wave's common stock was actively traded on the NYSE (through July 24, 2026) and on Nasdaq (from July 27, 2026). As of August 5, 2026, D-Wave had 369,263,837 common shares outstanding, in addition to 3,176,096 exchangeable shares. During the Class Period, D-Wave's common stock traded an average of approximately 27.3 million shares per day. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other Class members may be identified from records maintained by D-Wave or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

66. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

67. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

68. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period misrepresented or omitted material facts about D-Wave's Bookings, system-sales pipeline, business, operations, and prospects;

(c) whether the Individual Defendants caused D-Wave to issue false and misleading statements during the Class Period;

(d) whether Defendants acted knowingly or recklessly in issuing false and misleading statements;

(e) whether the prices of D-Wave securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

(f) whether the members of the Class have sustained damages and, if so, the proper measure of damages.

69. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**PRESUMPTION OF RELIANCE**

70. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine, *Basic Inc. v. Levinson*, 485 U.S. 224, 241–42, 247 (1988), in that:

(a) Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b) the omissions and misrepresentations were material;

(c) D-Wave securities are traded in an efficient market;

(d) D-Wave's shares were liquid and traded with heavy volume during the Class Period, averaging approximately 27.3 million shares per day;

(e) D-Wave's common stock traded on the NYSE and, from July 27, 2026, on Nasdaq, and was covered by multiple securities analysts;

(f) the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of D-Wave's securities; and

(g) Plaintiff and members of the Class purchased, acquired, and/or sold D-Wave securities between the time Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

71. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

72. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153–54 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

**COUNT I**

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

73. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

74. This Count is asserted against all Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

75. During the Class Period, Defendants engaged in a plan, scheme, conspiracy, and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices, and courses of business that operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes, and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of D-Wave securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire D-Wave securities at artificially inflated prices.

76. Pursuant to the above plan, scheme, conspiracy, and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the annual and quarterly reports, SEC filings, press releases, earnings call statements, and other statements and documents described above, which were designed to influence the market for D-Wave securities. Such reports, filings, releases, and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about D-Wave's Bookings, system-sales pipeline, business, operations, and prospects.

77. By virtue of their positions at D-Wave, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended

thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with deliberately reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.

78. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior officers of D-Wave, the Individual Defendants had knowledge of the details of D-Wave's internal affairs, including its Bookings, pipeline, and system-delivery schedules.

79. As a result of the dissemination of the aforementioned false and misleading reports, releases, and public statements, the market price of D-Wave securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning D-Wave's business that were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired D-Wave securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities, and/or upon statements disseminated by Defendants, and were damaged thereby.

80. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired D-Wave securities, or would not have done so at the inflated prices paid. At the time of their purchases and/or acquisitions, the true value of D-Wave securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of D-Wave securities declined sharply upon public disclosure of the facts alleged herein, to the injury of Plaintiff and Class members.

81. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

82. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and acquisitions of D-Wave securities during the Class Period, upon the disclosure of the truth concerning D-Wave's Bookings, system-sales pipeline, and business prospects.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

83. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

84. During the Class Period, the Individual Defendants participated in the operation and management of D-Wave, and conducted and participated, directly and indirectly, in the conduct of D-Wave's business affairs. Because of their senior positions, they knew the adverse non-public information concerning D-Wave's Bookings, system-sales pipeline, and the timing of system deliveries alleged herein.

85. As officers of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to D-Wave's business, operations, and prospects, and to correct promptly any public statements issued by D-Wave that had become materially false or misleading.

86. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases, earnings call statements, and public filings that D-Wave disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause D-Wave to engage in the wrongful acts complained of herein. The Individual Defendants therefore were "controlling persons" of D-Wave within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged, which artificially inflated the market price of D-Wave securities.

87. Each of the Individual Defendants, therefore, acted as a controlling person of D-Wave. By reason of their senior management positions, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, D-Wave to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of D-Wave and possessed the power to control

the specific activities that comprise the primary violations about which Plaintiff and the other members of the Class complain.

88. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by D-Wave.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees, and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: October 16, 2026

BRONSTEIN, GEWIRTZ & GROSSMAN, LLC

By: /s/ Michael J. Boyle, Jr.
Michael J. Boyle, Jr. (SBN 258560)
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 578-5582
mboyle@bgandg.com

Peretz Bronstein*
BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Pro hac vice application forthcoming

*Attorneys for Plaintiff*